[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Cuyahoga Lakefront, L.L.C. v. Cleveland,* **Slip Opinion No. 2016-Ohio-7640.**]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-7640

THE STATE EX REL. CUYAHOGA LAKEFRONT LAND, L.L.C., APPELLEE, *v.* THE CITY OF CLEVELAND, APPELLANT.

[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Cuyahoga Lakefront, L.L.C. v. Cleveland,* **Slip Opinion No. 2016-Ohio-7640.**]

*Takings—Mandamus—Ohio Constitution, Article I, Section 19—Sixteen-day street closure that blocked access to one of parking lot's two entrances was not a compensable taking under the Ohio Constitution—Judgment issuing writ of mandamus reversed.*

(No. 2015-0839—Submitted July 12, 2016—Decided November 8, 2016.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 101438, 2015-Ohio-1637.

_____

**Per Curiam.**

{¶ 1} We reverse the judgment of the Eighth District Court of Appeals, which granted a writ of mandamus compelling appellant, the city of Cleveland, to

commence an appropriation action. This case arose after Cleveland granted a permit to a production company to close a portion of West Third Street in downtown Cleveland for 16 consecutive days so that the company could film scenes for a movie. Appellee, Cuyahoga Lakefront Land, L.L.C. ("Lakefront"), owns a parking lot, and the closure of West Third Street cut off access to one of the lot's two entrances during the permit period. Lakefront asserts that the temporary closure of the street caused a taking of its property without just compensation in violation of Article I, Section 19 of the Ohio Constitution.

{¶ 2} However, Lakefront's access to West Third Street was not "substantially, materially or unreasonably interfered with" by the city of Cleveland under the analysis articulated in *State ex rel. OTR v. Columbus*, 76 Ohio St.3d 203, 208, 667 N.E.2d 8 (1996). Therefore, under Ohio law, no compensable taking occurred.

{¶ 3} Lakefront's complaint and the arguments in its brief focus primarily on Ohio law. However, Lakefront invokes the Takings Clause of the Fifth Amendment to the United States Constitution in passing. But because Lakefront has not set forth a separate takings argument under federal law and the appellate court did not consider that argument, we decline to undertake a federal constitutional analysis and we limit our discussion to whether there has been a compensable taking under Ohio law.

*Facts*

{¶ 4} In April 2013, Vita-Ray Productions, L.L.C., applied for a permit to close a portion of West Third Street in downtown Cleveland for 16 days in June of that year to film scenes for the movie *Captain America: The Winter Soldier*. The permit was approved on May 1, 2013. Cleveland determined that the closure was necessary to enable the filming and that the film production would bring jobs and tax revenue to the city and would positively promote Cleveland to potential visitors.

{¶ 5} Lakefront operates a parking lot, colloquially known as "the Pit," that abuts both West Third and West Ninth Streets, with entrances on both streets. During the time that the permit was in effect, one of the two entrances to the Pit was inaccessible due to the West Third Street closure. Lakefront asserts that this loss of access caused a substantial impairment of its business and its property rights.

{¶ 6} However, during the closure, Lakefront was able to continue operating the Pit and paying customers entered the lot through its West Ninth Street entrance. Signs were placed in the area, directing drivers to the alternative entrance to the Pit. In addition, the production company contracted with Lakefront to pay for 325 spaces in the lot for two days during the street closure, at a rate higher than the revenue per car that Lakefront's damages expert used in his calculations of its claimed lost profits.

{¶ 7} Lakefront's expert witness nevertheless found a loss of revenue for June 2013, plus losses during August, September, October, November, and December 2013 and January 2014 that he attributed to a diminution in the Pit's business because of the June 2013 closure, for a total claimed loss of revenue of $61,399. Lakefront's expert witness equated this amount to lost profit. The only damages evidence that Lakefront presented related to lost business profits.

{¶ 8} Lakefront engaged in multiple legal actions regarding the closure of West Third Street. It filed two suits in the Cuyahoga County Court of Common Pleas during the street closure—one, seeking a temporary restraining order, against the movie studios that were responsible for the *Captain America* production and one against Cleveland. *Cuyahoga Lakefront Land, L.L.C. v. Vita-Ray Productions, L.L.C.*, Cuyahoga C.P. No. CV-13-808299; *Cuyahoga Lakefront Land, L.L.C. v. Cleveland*, Cuyahoga C.P. No. CV-13-808467. The docket in the first case reflects that Lakefront reached a monetary settlement with the movie studios; Lakefront then voluntarily dismissed both cases.

**{¶ 9}** Lakefront then sued Cleveland in federal district court; that court granted summary judgment to Cleveland. Two of the counts in the federal case—those involving takings under Ohio and federal law—were dismissed by the court without prejudice because they were not ripe for review. *Cuyahoga Lakefront Property, L.L.C. v. Cleveland*, N.D.Ohio No. 1:13 CV 1319, 2014 WL 4661984, *3 (Sept. 17, 2014).

**{¶ 10}** This case was filed as an original action in the Eighth District Court of Appeals, which found that Cleveland had taken Lakefront's property without just compensation and which issued a writ of mandamus ordering Cleveland to commence appropriation proceedings. Cleveland appealed.

*Analysis*

**Due process**

**{¶ 11}** In its brief, Lakefront argues that its substantive- and procedural-due-process rights were violated; however, no due-process arguments are properly before us. Lakefront's substantive-due-process claims are res judicata, as they were considered and disposed of in the federal case, *Cuyahoga Lakefront*, 2014 WL 4661984, at *3. Moreover, Lakefront did not assert any substantive- or procedural-due-process claims in its complaint, and the court of appeals did not address any in its opinion. We therefore cannot address them now.

**Mandamus**

**{¶ 12}** To be entitled to extraordinary relief in mandamus, Lakefront must establish a clear legal right to the requested relief, a clear legal duty on the part of Cleveland to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Lakefront must prove that it is entitled to the writ by clear and convincing evidence. *Id.* at ¶ 13.

**{¶ 13}** Under Ohio law, "[m]andamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary

taking of private property is alleged." *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 53.

**Takings law in general**

{¶ 14} As we stated in an earlier case:

Regulatory-takings issues are complex and difficult and have defied attempts to provide a simple solution. Even the United States Supreme Court "quite simply, has been unable to develop any 'set formula' for determining when 'justice and fairness' require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons."

*State ex rel. R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 1, quoting *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). The purpose of the takings clauses in the Ohio and United States constitutions is "to prevent government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *R.T.G.* at ¶ 33, quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960).

**Public roadway access**

{¶ 15} Lakefront correctly asserts that access to a public roadway abutting a property is an elemental right of real property ownership, *OTR*, 76 Ohio St.3d at 207, 667 N.E.2d 8. In *OTR*, the city of Columbus elevated the roadway along the entire frontage of the relator's property, permanently removing all access from the property to the road and requiring the property to be accessed via secondary roads. This court held that an owner of real property has an easement to the public street on which the owner's property abuts and if that easement is substantially,

materially, or unreasonably interfered with by the government, even if there is another access point to the land, the owner has a right to just compensation. *Id*. at 208.

{¶ 16} On the other hand, we have also recognized that

[m]ere circuity of travel, necessarily and newly created, to and from real property does not of itself result in legal impairment of the right of ingress and egress to and from such property, where any resulting interference is but an inconvenience shared in common with the general public and is necessary in the public interest to make travel safer and more efficient.

*State ex rel. Merritt v. Linzell*, 163 Ohio St. 97, 102, 126 N.E.2d 53 (1955). In *Merritt*, the relators owned a tract of land with a service station, store, and restaurant along U.S. Highway 50 in Athens County. The state rerouted Highway 50 away from the relators' property, onto a newly built section of road. The old road remained intact, but it was no longer a part of Highway 50, meaning that the volume of traffic driving past the relators' businesses was greatly reduced and customers had to take a more circuitous route to reach the businesses from Highway 50.

{¶ 17} The facts in this case are a hybrid of those in *OTR* and those in *Merritt*. Access to an abutting roadway was cut off, as in *OTR*, but, as in *Merritt*, it resulted in "mere circuitry of travel," *id*., an inconvenience shared by the general public and by many other businesses. As in *Merritt*, the property was still accessible to the public but customers had to take a different route to access it.

{¶ 18} This case is distinguishable from both *OTR* and *Merritt*, however, in that the restriction of access to the Pit was temporary—lasting only 16 days—rather than permanent. Ohio courts have held that temporary interference with access to property during highway construction or repair does not rise to the level of a

compensable taking. *Certain v. Hurst*, 4th Dist. Pickaway No. 90CA5, 1991 WL 122850, *3 (July 3, 1991), citing *Bellevue v. Stedman*, 63 Ohio App. 150, 154, 25 N.E.2d 695 (6th Dist.1939), and *Colonial Furniture Co. v. Cleveland Union Terminal Co.*, 47 Ohio App. 399, 406, 191 N.E. 903 (8th Dist.1934).

{¶ 19} Similarly, the temporary loss of Lakefront's access to West Third Street for the duration of the Vita-Ray permit did not substantially, materially, or unreasonably interfere with Lakefront's easement and did not create a compensable taking of Lakefront's property under Ohio law.

*Conclusion*

{¶ 20} Lakefront has failed to show that the temporary loss of access to one of the two entrances to the Pit was an unconstitutional taking of its property, and no writ should issue.

Judgment reversed.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

PFEIFER, J., dissents and would affirm the judgment of the Eighth District Court of Appeals.

_____

Barbara A. Langhenry, Director of Law, and John J. Bacevice, Assistant Director of Law, for appellant.

Waxman Blumenthal, L.L.C., Michael R. Blumenthal, and David B. Waxman, for appellee.

_____